
# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| APRIL MORRIS<br>97 Friendly Lane<br>Levittown, PA 19055<br><br>          Plaintiff,<br><br>     v.<br><br>SOLARAY, LLC *d/b/a* SNI<br>Four Neshaminy Interplex Drive, Suite 301<br>Feasterville -Trevose, PA 19503<br>     and<br>SRP COMPANIES, INC.<br>401 South Wilcox Street<br>Castle Rock, CO 80104<br>     and<br>PUGS, INC.<br>401 South Wilcox Street<br>Castle Rock, CO 80104<br>     and<br>TODD COHEN<br>Four Neshaminy Interplex Drive, Suite 301<br>Feasterville – Trevose, PA 19503<br>     and<br>RANDALL COHEN<br>Four Neshaminy Interplex Drive, Suite 301<br>Feasterville – Trevose, PA 19503<br>     and<br>CHRIS RULLMAN<br>Four Neshaminy Interplex Drive, Suite 301<br>Feasterville – Trevose, PA 19503<br><br>          Defendants. | CIVIL ACTION<br><br>NO.: _____<br><br><br><br>**JURY TRIAL DEMANDED** |

## **CIVIL ACTION COMPLAINT**

April Morris (*hereinafter* referred to as "Plaintiff," unless indicated otherwise) by and through her undersigned counsel, hereby avers as follows:

## INTRODUCTION

1. Plaintiff has initiated this action to redress violations by Solaray, LLC *d/b/a* SNI, SRP Companies, Inc., Pugs, Inc., Todd Cohen, Randall Cohen, and Chris Rullman (*hereinafter* collectively referred to as "Defendants") of the Americans with Disabilities Act, as amended ("ADA" – 42 U.S.C. §§ 12101 *et. seq.*), the Family and Medical Leave Act ("FMLA" - 29 U.S.C. §§ 2601 *et. seq.*), and the Pennsylvania Human Relations Act ("PHRA").[1] As a direct consequence of Defendants' unlawful actions, Plaintiff seeks damages as set forth herein.

## JURISDICTION AND VENUE

2. This Court has original subject matter jurisdiction over the instant action pursuant to 28 U.S.C. §§ 1331 and 1343(a)(4) because it arises under the laws of the United States and seeks redress for violations of federal laws.

3. This Court may properly assert personal jurisdiction over Defendants because their contacts with this state and this judicial district are sufficient for the exercise of jurisdiction over Defendants to comply with traditional notions of fair play and substantial justice, satisfying the standard set forth by the United States Supreme Court in *Int'l Shoe Co. v. Washington*, 326 U.S. 310 (1945), and its progeny.

4. Pursuant to 28 U.S.C. § 1391(b)(1) and (b)(2), venue is properly laid in this district because Defendants are deemed to reside where they are subjected to personal jurisdiction, rendering Defendants residents of the Eastern District of Pennsylvania.

5. Plaintiff is proceeding herein (in part) under the ADA after properly exhausting all administrative remedies with respect to such claims by timely filing a Charge of Discrimination

---

[1] Plaintiff's claims under the PHRA are referenced herein for notice purposes. She is required to wait 1 full year before initiating a lawsuit from date of dual-filing with the EEOC. Plaintiff must however file her lawsuit in advance of same because of the date of issuance of her federal right-to-sue-letter under the ADA. Plaintiff's PHRA claims however will mirror identically her federal claims under the ADA.

with the Equal Employment Opportunity Commission ("EEOC") and by filing the instant lawsuit within ninety ("90") days of receiving a notice of dismissal and/or right to sue letter from the EEOC.

## PARTIES

6. The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

7. Plaintiff is an adult individual with an address as set forth in the caption.

8. Solaray, LLC *d/b/a* SNI, upon information and belief, is an inhouse brand of SRP Companies, Inc. which operates as a sunglass company offering eyewear, wireless accessories, lighters, and gift and apparel items through convenience stores, travel centers, and truck stop venues. At the time of her termination, Plaintiff was working out of the Solaray, LLC *d/b/a* SNI location set forth in the above-caption. Solaray, LLC *d/b/a* SNI is listed as Plaintiff's employer on her paystubs and W-2 forms.

9. SRP Companies, Inc., upon information and belief, is a provider of in-store merchandising services, offers product and display design, international sourcing, route-based services, and in-store merchandising, through several divisions/brands, including Solaray, LLC *d/b/a* SNI and Pugs, Inc, with headquarters located at the address as set forth in the above-caption.

10. Pugs, Inc., upon information and belief, is an inhouse brand/division of SRP Companies, Inc. that provides apparel products and accessories, offering sunglasses, apparel, and gloves, with headquarters located at the address as set forth in the above-caption.[2]

---

[2] Defendants Solaray, LLC *d/b/a* SNI, SRP Companies, Inc., Pugs, Inc. are *hereinafter* collectively referred to as "Defendant Entities," unless indicated otherwise.

11. Upon information and belief, Todd Cohen (*hereinafter* "Defendant TC"), President/Founder of SRP Companies, Inc. and Solaray, LLC *d/b/a* SNI, is a high-level manager and decision maker concerning terms and conditions of employment for employees (including Plaintiff), including but not limited to overall hiring, firing, discipline, compensation, and other business operations (among other duties).

12. Upon information and belief, Randall Cohen (*hereinafter* "Defendant RC"), Vice President/Founder of SRP Companies, Inc. and Solaray, LLC *d/b/a* SNI, is a high-level manager and decision maker concerning terms and conditions of employment for employees (including Plaintiff), including but not limited to overall hiring, firing, discipline, compensation, and other business operations (among other duties).

13. Upon information and belief, Chris Rullman (*hereinafter* "Defendant Rullman"), Chief Human Resources Officer for SRP Companies, Inc., is a high-level manager and decision maker concerning terms and conditions of employment for employees (including Plaintiff), including but not limited to managing payroll, compensation/payment of wages for work performed, benefits and leave administration, and hiring/firing.

14. The business names set forth above were used interchangeably on Plaintiff's employment documents and internal documents within Defendants.

15. Upon information and belief, the above entities (s*ee* Paragraphs 8-10), were run as a joint operation and enterprise with centralized management and overlapping resources, are greatly comingled, and merely operate under different names.  Because of their interrelation of operations, common ownership or management, centralized control of labor relations, common ownership or financial controls, and other factors, Defendants are sufficiently interrelated and

integrated in their activities, labor relations, ownership and management that they may be treated as a single and/or joint employer for purposes of the instant action.

16. At all times relevant herein, Defendants acted by and through their agents, servants and employees, each of whom acted at all times relevant herein in the course and scope of their employment with and for the Defendants.

## FACTUAL BACKGROUND

17. The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

18. Plaintiff was employed by Defendants from in or about 2005 until her unlawful termination (discussed further *infra*) on or about December 10, 2019. In total, while Plaintiff had an approximate overall 14-year tenure with Defendants (including predecessor companies), she did have an involuntary approximate 3 year break of employment (after being separated from Defendants due to acquisition by a predecessor company), before returning in or about 2013-2014 (although Defendants maintained her overall tenure pre-and post-return).

19. At the time of her termination, Plaintiff held the position of Business Development personnel and physically worked out of Defendants' Four Neshaminy Interplex Drive location in Trevose-Feasterville, Pennsylvania (following a company building relocation from Bensalem, Pennsylvania where Plaintiff spent most of her tenure).

20. Plaintiff was primarily supervised by Defendant TC and indirectly supervised by Defendant RC.

21. Throughout her tenure with Defendants, Plaintiff was considered by Defendants to be an exemplary employee until in or about early 2019, when Plaintiff began to discuss her health

status and seek medical accommodations, at which point Plaintiff began to encounter tremendous hostility from Defendants.

22.   At all relevant times during the latter part of her employment with Defendants, Plaintiff suffered from and continues to suffer from several disabilities, including but not limited to serious neurological disorders (including but not limited to dystonia), and associated complications.

23.   As a result of her aforesaid health conditions, Plaintiff experiences extreme muscle spasms and jerking movements, muscle pain, and numbness of extremities, which (at times) limits her ability to perform some daily life activities, including but not limited to walking and sitting for extended periods, concentrating, and working (among other daily life activities).

24.   Despite her aforesaid health conditions and limitations, Plaintiff was able to perform the duties of her job well with Defendants; however, Plaintiff did require some reasonable accommodations while employed with Defendants (as discussed *infra*).

25.   Plaintiff apprised Defendants' management and Human Resources ("HR"), including but not limited to Defendants TC, RC, and Rullman, as well as Rullman's HR assistant, Jennifer Iannapollo (*hereinafter* "Iannapollo") and HR Personnel (and wife of Defendant TC), Melissa Cohen (*hereinafter* "MC"), of her aforesaid disabilities and need for medical accommodations on several occasions throughout the remainder of her employment with Defendants.

26.   For example, in the February 2019 timeframe, Plaintiff had requested a medical accommodation to work remotely (from home) as well as intermittent time off for doctor's appointments and specified a clear medical rationale for same (neurological and other complications).

27.     Defendants, however, conditioned Plaintiff's medical accommodations, as she came to learn in April of 2019, upon a **50% pay reduction**.  Because Plaintiff had no reasonable alternative for medical reasons, she worked remotely with a substantial pay reduction. Nonetheless, Plaintiff continued to work full-time and to perform her entire job well (as she performed a role that could be done 100% of the time remotely); in fact, she had remotely closed a million-dollar deal in or about March of 2019.

28.      From April of 2019 through her termination, Plaintiff protested the fact that her compensation was slashed solely because of an accommodation request wherein she still performed the same pre-accommodation role.  Plaintiff believed this to be discriminatory and retaliatory, and she vocalized such concerns to Defendants' management on several occasions, seeking a payment reconciliation and retroactive pay.

29.     On or about June 13, 2019, Plaintiff required a medical leave of absence, which was protected and governed by the Family and Medical Leave Act ("FMLA").  Plaintiff utilized this federally-protected medical leave until she was able to return to work on or about October 8, 2019 (with the last month of leave being an accommodation under the ADA post-FMLA exhaustion).[3]

---

[3] 29 C.F.R. § 825.702(a) states:

(a) Nothing in FMLA modifies or affects any Federal or State law prohibiting discrimination on the basis of race, religion, color, national origin, sex, age, **or disability** (*e.g.,* Title VII of the Civil Rights Act of 1964, as amended by the Pregnancy Discrimination Act) . . . The purpose of the FMLA is to make leave available to eligible employees and employers within its coverage, and not to limit already existing rights and protection." S. Rep. No. 103-3, at 38 (1993). **An employer must therefore provide leave under whichever statutory provision provides the greater rights to employees. When an employer violates both FMLA and a discrimination law, an employee may be able to recover under either or both statutes (double relief may not be awarded for the same loss; when remedies coincide, a claimant may be allowed to utilize whichever avenue of relief is desired.** *Laffey* v. *Northwest Airlines, Inc.,* 567 F.2d 429, 445 (D.C. Cir. 1976), *cert. denied,* 434 U.S. 1086 (1978) (emphasis added); *see also Sharbaugh,* 2016 WL 6834613, at *16-17 (holding that less than eight months of leave, five of which occurred after exhaustion of FMLA, could constitute a reasonable accommodation under the ADA); *E.E.O.C. v. Midwest Indep. Transmission Sys. Operator, Inc.*, No. 1:11-CV-1703-WTL-DML, 2013 WL 2389856, at *3-5 (S.D. Ind. May 30, 2013) (denying summary judgment for defendant with employee who requested accommodation of two months additional leave after FMLA had exhausted, for a total of five months of medical leave).

7

30. While out on medical leave, Plaintiff kept Defendants' management and HR, including but not limited to Defendants TC and Rullman, as well as Iannapollo, apprised of the status of her serious health conditions, including her anticipated return to work date.

31. Nevertheless, upon Plaintiff's return to work on or about October 8, 2019, she continued to experience tremendous animosity from management, a derogatory demeanor, scrutiny, and point-blank negativity. For example, but not intended to be an exhaustive list:

   a. Defendants' management seemed very upset that Plaintiff requested numerous accommodations (i.e. time off for medical appointments as needed, other workplace accommodations – such as the ability to close her office door and blinds – and the ability to work remotely) and began to verbally reprimand her for same;

   b. Defendants' management began to overly scrutinize and criticize her work; and

   c. Defendants' management selectively enforced policies against Plaintiff.

32. Defendants' management and HR generally granted most of Plaintiff's accommodations, and they agreed to let her work 2 days per week remotely instead of more (as she had requested and her doctor recommended); however, they continued to subject her to hostility and animosity through pretextual admonishment and disparate treatment because of her aforesaid health conditions and requests for/utilization of reasonable accommodations.

33. As a result, leading up to her termination, Plaintiff complained to Defendants' management, including but not limited to Defendants TC, RC, and Rullman – as well two members of upper management, Chief Financial Officer ("CFO"), Deanne Brunts (*hereinafter* "Brunts") and Chief Executive Officer, Darren Eisele (*hereinafter* "Eisele") – that she was still being subjected to discrimination and retaliation because of her disabilities and her requests for accommodations and that she believed the negative treatment she continued to receive was also

retaliation for her prior complaints of disability discrimination, retaliation, and Defendants' failure to properly accommodate her.

34. Despite Plaintiff's aforesaid complaints of discrimination, Defendants failed to investigate or resolve such concerns; instead, Plaintiff was subjected to increased hostility and animosity by Defendants' management.

35. Plaintiff was shocked by Defendants' management's clear hostility and frustration toward her requests for/utilization of the aforesaid reasonable accommodations, because she was able to perform all essential functions of her job, while working from the office as required and partially from home.  In fact, throughout Plaintiff's tenure with Defendants, she had often worked up to 70-hour work weeks as needed (with the workload being significant) and was able to perform her job from home or office, as physical office presence was not necessary or required (*except for* Defendants' **arbitrary** insistence).

36. In addition to being subjected to a hostile work environment, disability discrimination, and retaliation for both her requests for/utilization of reasonable accommodations and her complaints of disability discrimination and retaliation, Plaintiff was also subjected to discrimination and disparate treatment because of her mother's disabilities (which included but were not limited to heart conditions and resulting complications).

37. For example, on December 2 and 3 of 2019, Plaintiff worked remotely (approved by Defendants as a reasonable accommodation); however, on or about December 4, 2019, Plaintiff informed Defendants' management and HR, including but not limited to Defendants TC, RC, and Rullman, as well as Iannapollo, via e-mail that her mother was undergoing "emergency heart surgery," "had a heart attack," and was "admitted to the hospital."   Plaintiff, also explained that

9

she would still be working remotely throughout the day and could be contacted for any business matters even though she would be in the hospital with her mother.

38. Defendants' management and HR (in particular Rullman), responded to Plaintiff's aforesaid December 4, 2019 email that same day, without offering any condolences or expressing sympathy. Rather, Plaintiff simply informed Plaintiff that her "day off request [is] denied and will be documented as insubordinate and unexcused" . . . further stating "the company is evaluating appropriate disciplinary action."

39. On or about December 5, 2019, Plaintiff updated all management via email that she would resume physically being able to work in the office on Monday, December 9, 2019; however, Plaintiff was abruptly terminated for "insubordination," effective December 10, 2019.

40. Defendants' purported reason for terminating Plaintiff – "insubordination" – is completely pretextual because *inter alia* (1) Plaintiff consistently worked hard for Defendants and performed her job well; (2) Plaintiff needed to work remotely **_for only 3 days_** (December 4-6, 2019), **_while her mother was undergoing life threatening surgery_**; (3) Plaintiff was accused of insubordination merely for being in the hospital with her potentially dying mother for 3 days **_while working_** for Defendants; (4) Plaintiff was subjected to animosity and hostility after apprising Defendants of her serious health conditions and need for accommodations through disparate treatment, pretextual admonishment, and a 50% reduction in pay; (5) Plaintiff was terminated in close proximity to her requests and/or utilization of medical accommodations; (6) other employees who have needed several days off from work (and don't even offer to work remotely) have not been terminated for emergencies; (7) Plaintiff was treated disparately as compared to other employees who were permitted to work remotely throughout 2019 in many ways without being subjected to hostility, pay reduction, discipline and/or termination; and (8) Plaintiff was terminated

in close proximity to her expressed concerns of unfair treatment as a result of her disabilities and requests for medical accommodations (as discussed *supra*).

**COUNT I**
**Violations of the Americans with Disabilities Act, as Amended ("ADA")**
**([1] Actual/Perceived/Record of Disability Discrimination; [2] Hostile Work Environment; [3] Retaliation; and [4] Failure to Accommodate)**
-Against Defendant Entities Only-

41. The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

42. Plaintiff suffered from qualifying health conditions under the ADA which affected her ability (at times) to perform some daily life activities including, but not limited walking and sitting for extended periods, concentrating, and working.

43. Plaintiff kept Defendant Entities' management informed of her serious medical conditions and need for accommodations.

44. Despite Plaintiff's aforementioned health conditions and limitations, she was still able to perform the duties of her job well with Defendant Entities; however, Plaintiff did require reasonable medical accommodations at times.

45. Plaintiff requested reasonable accommodations from Defendant Entities, including but not limited to the ability to work remotely (from home), intermittent and block time off for doctors' visits and to care for and treat her serious health conditions, and the ability to shut her office door and blinds while working in the office to minimize exacerbation of her disabilities.

46. Defendant Entities failed to properly accommodate all of Plaintiff's accommodation requests and conditioned her medical accommodations upon **a 50% pay reduction**.

47. Plaintiff was subjected to hostility and animosity due to her health and/or requests for accommodations through demeaning and/or discriminatory treatment towards her (as discussed *supra*).

48. Plaintiff complained to Defendant Entities' management on several occasions that she believed the negative treatment she was receiving constituted disability discrimination and retaliation for her requests for accommodations, as well as retaliation for her prior complaints of disability discrimination and retaliation.

49. On or about December 10, 2019, in close proximity to Plaintiff's requests and/or utilization of reasonable accommodations and her concerns of unfair treatment because of her disabilities and requests for accommodation, Plaintiff was abruptly terminated from her employment with Defendant Entities.

50. Plaintiff believes and therefore avers that she was subjected to a hostile work environment, pretextual discipline, and given a 50% reduction in pay because of (1) her known and/or perceived health problems; (2) her record of impairment; (3) in retaliation for her requested accommodations through disparate treatment, demeaning and/or discriminatory treatment toward her (as discussed *supra*); (4) her expressed concerns of disability discrimination and retaliation (for her complaints of same); (5) Defendant Entities' failure to properly accommodate her; and (6) her expressed concerns of Defendant Entities' failure to properly accommodate her.

51. Plaintiff believes and therefore avers that she was terminated because of (1) her known and/or perceived health problems; (2) her record of impairment; (3) her requested accommodations (which constitutes illegal retaliation); (4) her expressed concerns of disability discrimination and retaliation (for her complaints of same); and (5) her expressed concerns of Defendant Entities' failure to accommodate her.

52. These actions aforesaid constitute violations of the ADA.

## COUNT II
### Violations of the Americans with Disabilities Act, as Amended ("ADA")
**(Associational Disability Discrimination)**
-Against Defendant Entities-

53. The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

54. Plaintiff's mother suffered from qualifying health conditions under the ADA, including but not limited to heart conditions and accompanying complications.

55. Defendant Entities knew of Plaintiff's mother's disabilities at the time of Plaintiff's termination.

56. Plaintiff was terminated by Defendant Entities for completely pretextual reasons shortly after requesting to work remotely in the hospital ***for just 3 days with her potentially dying mother***, who was undergoing life-threatening emergency heart surgery.

57. Upon information and belief, Plaintiff believes and avers that she was terminated by Defendant Entities for: (a) being perceived as distracted for dealing with her mother's health problems in and outside of work; (b) being perceived as having to miss time at work to care for her mother; and/or (c) for other reasons in association with her mother's health problems.

58. These actions as aforesaid constitute violations of the ADA, as amended.

## COUNT III
### Violations of the Family and Medical Leave Act ("FMLA")
**(Retaliation & Interference)**
-Against All Defendants-

59. The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

60. Plaintiff was an eligible employee under the definitional terms of the FMLA, 29 U.S.C. § 2611(a)(i)(ii).

61. Plaintiff requested leave for medical reasons from Defendants, her employers, with whom she had been employed for at least twelve months pursuant to the requirements of 29 U.S.C.A § 2611(2)(i).

62. Plaintiff had at least 1,250 hours of service with Defendants during her last full year of employment.

63. Defendants are engaged in an industry affecting commerce and employed at least fifty (50) or more employees within 75 miles of the location where Plaintiff worked for Defendants for each working day during each of the twenty (20) or more calendar work weeks in the current or proceeding calendar year, pursuant to 29 U.S.C.A § 2611(4)(A)(i).

64. Plaintiff was entitled to receive leave pursuant to 29 U.S.C.A § 2612 (a)(1) for a total of twelve (12) work weeks of leave on a block or intermittent basis.

65. Plaintiff submitted block FMLA paperwork to care for and treat her serious health conditions in close proximity to her termination.

66. Defendants committed interference and retaliation violations of the FMLA by: (1) terminating Plaintiff for requesting and/or exercising her FMLA rights and/or for taking FMLA-qualifying leave; (2) by considering Plaintiff's FMLA leave needs in making the decision to terminate her; (3) pay reducing Plaintiff's pay by 50% and terminating her to intimidate her and/or prevent her from taking FMLA-qualifying leave in the future; (4) by making negative comments and/or taking actions towards her that would dissuade a reasonable person from exercising her rights under the FMLA.

67. These actions as aforesaid constitute violations of the FMLA.

**WHEREFORE**, Plaintiff prays that this Court enter an Order providing that:

A. Defendants are to promulgate and adhere to a policy prohibiting discrimination and retaliation in the future against any employee(s);

B. Defendants are to compensate Plaintiff, reimburse Plaintiff, and make Plaintiff whole for any and all pay and benefits Plaintiff would have received had it not been for Defendants' illegal actions, including but not limited to back pay, front pay, salary, pay increases, bonuses, insurance, benefits, training, promotions, reinstatement and seniority;

C. Plaintiff is to be awarded liquidated and/or punitive damages as permitted by applicable law, in an amount believed by the Court or trier of fact to be appropriate to punish Defendants for their willful, deliberate, malicious and outrageous conduct and to deter Defendants or other employers from engaging in such misconduct in the future;

D. Plaintiff is to be accorded other equitable and legal relief as the Court deems just, proper and appropriate (including but not limited to damages for emotional distress, pain, suffering and humiliation); and

E. Plaintiff is to be awarded the costs and expenses of this action and reasonable attorney's fees as provided by applicable federal and state law.

Respectfully submitted,

**KARPF, KARPF & CERUTTI, P.C.**

By: _____
Ari R. Karpf, Esq.
3331 Street Rd.
Two Greenwood Square, Suite 128
Bensalem, PA 19020
(215) 639-0801

Dated: April 21, 2020

# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

### CASE MANAGEMENT TRACK DESIGNATION FORM

| | |
|---|---|
| April Morris | CIVIL ACTION |
| v. | |
| Solaray, LLC d/b/a SNI, et al. | NO. |

In accordance with the Civil Justice Expense and Delay Reduction Plan of this court, counsel for plaintiff shall complete a Case Management Track Designation Form in all civil cases at the time of filing the complaint and serve a copy on all defendants. (See § 1:03 of the plan set forth on the reverse side of this form.) In the event that a defendant does not agree with the plaintiff regarding said designation, that defendant shall, with its first appearance, submit to the clerk of court and serve on the plaintiff and all other parties, a Case Management Track Designation Form specifying the track to which that defendant believes the case should be assigned.

**SELECT ONE OF THE FOLLOWING CASE MANAGEMENT TRACKS:**

(a) Habeas Corpus – Cases brought under 28 U.S.C. § 2241 through § 2255. ( )

(b) Social Security – Cases requesting review of a decision of the Secretary of Health and Human Services denying plaintiff Social Security Benefits. ( )

(c) Arbitration – Cases required to be designated for arbitration under Local Civil Rule 53.2. ( )

(d) Asbestos – Cases involving claims for personal injury or property damage from exposure to asbestos. ( )

(e) Special Management – Cases that do not fall into tracks (a) through (d) that are commonly referred to as complex and that need special or intense management by the court. (See reverse side of this form for a detailed explanation of special management cases.) ( )

(f) Standard Management – Cases that do not fall into any one of the other tracks. (X)

| 4/21/2020 | _signature_ | Plaintiff |
|---|---|---|
| **Date** | **Attorney-at-law** | **Attorney for** |
| (215) 639-0801 | (215) 639-4970 | akarpf@karpf-law.com |
| **Telephone** | **FAX Number** | **E-Mail Address** |

(Civ. 660) 10/02

UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

**DESIGNATION FORM**
*(to be used by counsel or pro se plaintiff to indicate the category of the case for the purpose of assignment to the appropriate calendar)*

Address of Plaintiff: 97 Friendly Lane, Levittown, PA 19055

Address of Defendant: Four Neshaminy Interplex Drive, Suite 301, Trevose, PA 19053; 401 South Wilcox Street, Castle Rock, CO 80104

Place of Accident, Incident or Transaction: Defendants place of business

---

*RELATED CASE, IF ANY:*

Case Number: _____ Judge: _____ Date Terminated: _____

Civil cases are deemed related when *Yes* is answered to any of the following questions:

1. Is this case related to property included in an earlier numbered suit pending or within one year previously terminated action in this court?  Yes ☐   No ☒

2. Does this case involve the same issue of fact or grow out of the same transaction as a prior suit pending or within one year previously terminated action in this court?  Yes ☐   No ☒

3. Does this case involve the validity or infringement of a patent already in suit or any earlier numbered case pending or within one year previously terminated action of this court?  Yes ☐   No ☒

4. Is this case a second or successive habeas corpus, social security appeal, or pro se civil rights case filed by the same individual?  Yes ☐   No ☒

I certify that, to my knowledge, the within case ☐ is / ☒ is not related to any case now pending or within one year previously terminated action in this court except as noted above.

DATE: 4/21/2020  _____ ARK2484 / 91538
*Attorney-at-Law / Pro Se Plaintiff*   *Attorney I.D. # (if applicable)*

---

**CIVIL:** *(Place a √ in one category only)*

A. *Federal Question Cases:*
☐ 1. Indemnity Contract, Marine Contract, and All Other Contracts
☐ 2. FELA
☐ 3. Jones Act-Personal Injury
☐ 4. Antitrust
☐ 5. Patent
☐ 6. Labor-Management Relations
☒ 7. Civil Rights
☐ 8. Habeas Corpus
☐ 9. Securities Act(s) Cases
☐ 10. Social Security Review Cases
☐ 11. All other Federal Question Cases
*(Please specify): _____*

B. *Diversity Jurisdiction Cases:*
☐ 1. Insurance Contract and Other Contracts
☐ 2. Airplane Personal Injury
☐ 3. Assault, Defamation
☐ 4. Marine Personal Injury
☐ 5. Motor Vehicle Personal Injury
☐ 6. Other Personal Injury *(Please specify): _____*
☐ 7. Products Liability
☐ 8. Products Liability – Asbestos
☐ 9. All other Diversity Cases
*(Please specify): _____*

---

**ARBITRATION CERTIFICATION**
*(The effect of this certification is to remove the case from eligibility for arbitration.)*

I, Ari R. Karpf, counsel of record *or* pro se plaintiff, do hereby certify:

☒ Pursuant to Local Civil Rule 53.2, § 3(c)(2), that to the best of my knowledge and belief, the damages recoverable in this civil action case exceed the sum of $150,000.00 exclusive of interest and costs:

☐ Relief other than monetary damages is sought.

DATE: 4/21/2020  _____ ARK2484 / 91538
*Attorney-at-Law / Pro Se Plaintiff*   *Attorney I.D. # (if applicable)*

NOTE: A trial de novo will be a trial by jury only if there has been compliance with F.R.C.P. 38.

*Civ. 609 (5/2018)*

JS 44   (Rev. 06/17)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a) PLAINTIFFS
MORRIS, APRIL

**(b)** County of Residence of First Listed Plaintiff: Bucks
*(EXCEPT IN U.S. PLAINTIFF CASES)*

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*
Karpf, Karpf & Cerutti, P.C.; 3331 Street Road, Two Greenwood Square, Suite 128, Bensalem, PA 19020; (215) 639-0801; akarpf@karpf-law.com

### DEFENDANTS
SOLARAY, LLC D/B/A SNI, ET AL.

County of Residence of First Listed Defendant: Bucks
*(IN U.S. PLAINTIFF CASES ONLY)*

NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

Attorneys *(If Known)*

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

- [ ] 1 U.S. Government Plaintiff
- [X] 3 Federal Question *(U.S. Government Not a Party)*
- [ ] 2 U.S. Government Defendant
- [ ] 4 Diversity *(Indicate Citizenship of Parties in Item III)*

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff and One Box for Defendant)* (For Diversity Cases Only)

|  | PTF | DEF |  | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | 1 | 1 | Incorporated *or* Principal Place of Business In This State | 4 | 4 |
| Citizen of Another State | 2 | 2 | Incorporated *and* Principal Place of Business In Another State | 5 | 5 |
| Citizen or Subject of a Foreign Country | 3 | 3 | Foreign Nation | 6 | 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*

Click here for: Nature of Suit Code Descriptions.

| CONTRACT | TORTS |  | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | 625 Drug Related Seizure of Property 21 USC 881 | 422 Appeal 28 USC 158 | 375 False Claims Act |
| 120 Marine | 310 Airplane | 365 Personal Injury - Product Liability | 690 Other | 423 Withdrawal 28 USC 157 | 376 Qui Tam (31 USC 3729(a)) |
| 130 Miller Act | 315 Airplane Product Liability |  |  |  | 400 State Reapportionment |
| 140 Negotiable Instrument | 320 Assault, Libel & Slander | 367 Health Care/ Pharmaceutical Personal Injury Product Liability |  | **PROPERTY RIGHTS** | 410 Antitrust |
| 150 Recovery of Overpayment & Enforcement of Judgment | 330 Federal Employers' Liability |  |  | 820 Copyrights | 430 Banks and Banking |
| 151 Medicare Act |  |  |  | 830 Patent | 450 Commerce |
| 152 Recovery of Defaulted Student Loans (Excludes Veterans) | 340 Marine | 368 Asbestos Personal Injury Product Liability |  | 835 Patent - Abbreviated New Drug Application | 460 Deportation |
| 153 Recovery of Overpayment of Veteran's Benefits | 345 Marine Product Liability | **PERSONAL PROPERTY** | **LABOR** | 840 Trademark | 470 Racketeer Influenced and Corrupt Organizations |
| 160 Stockholders' Suits | 350 Motor Vehicle | 370 Other Fraud | 710 Fair Labor Standards Act | **SOCIAL SECURITY** | 480 Consumer Credit |
| 190 Other Contract | 355 Motor Vehicle Product Liability | 371 Truth in Lending | 720 Labor/Management Relations | 861 HIA (1395ff) | 490 Cable/Sat TV |
| 195 Contract Product Liability | 360 Other Personal Injury | 380 Other Personal Property Damage | 740 Railway Labor Act | 862 Black Lung (923) | 850 Securities/Commodities/ Exchange |
| 196 Franchise |  | 385 Property Damage Product Liability | 751 Family and Medical Leave Act | 863 DIWC/DIWW (405(g)) | 890 Other Statutory Actions |
|  | 362 Personal Injury - Medical Malpractice |  |  | 864 SSID Title XVI | 891 Agricultural Acts |
|  |  |  |  | 865 RSI (405(g)) | 893 Environmental Matters |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | 790 Other Labor Litigation | **FEDERAL TAX SUITS** | 895 Freedom of Information Act |
| 210 Land Condemnation | 440 Other Civil Rights | **Habeas Corpus:** | 791 Employee Retirement Income Security Act | 870 Taxes (U.S. Plaintiff or Defendant) | 896 Arbitration |
| 220 Foreclosure | 441 Voting | 463 Alien Detainee |  | 871 IRS—Third Party 26 USC 7609 | 899 Administrative Procedure Act/Review or Appeal of Agency Decision |
| 230 Rent Lease & Ejectment | 442 Employment | 510 Motions to Vacate Sentence |  |  |  |
| 240 Torts to Land | 443 Housing/ Accommodations | 530 General |  |  | 950 Constitutionality of State Statutes |
| 245 Tort Product Liability | [X] 445 Amer. w/Disabilities - Employment | 535 Death Penalty | **IMMIGRATION** |  |  |
| 290 All Other Real Property | 446 Amer. w/Disabilities - Other | **Other:** | 462 Naturalization Application |  |  |
|  |  | 540 Mandamus & Other | 465 Other Immigration Actions |  |  |
|  | 448 Education | 550 Civil Rights |  |  |  |
|  |  | 555 Prison Condition |  |  |  |
|  |  | 560 Civil Detainee - Conditions of Confinement |  |  |  |

## V. ORIGIN *(Place an "X" in One Box Only)*

- [X] 1 Original Proceeding
- [ ] 2 Removed from State Court
- [ ] 3 Remanded from Appellate Court
- [ ] 4 Reinstated or Reopened
- [ ] 5 Transferred from Another District *(specify)*
- [ ] 6 Multidistrict Litigation - Transfer
- [ ] 8 Multidistrict Litigation - Direct File

## VI. CAUSE OF ACTION
Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
ADA (42USC12101); FMLA (29USC2601)

Brief description of cause:
Violations of the ADA, FMLA and the PA Human Relations Act.

## VII. REQUESTED IN COMPLAINT:
- [ ] CHECK IF THIS IS A **CLASS ACTION** UNDER RULE 23, F.R.Cv.P.

DEMAND $

CHECK YES only if demanded in complaint:
JURY DEMAND: [X] Yes  [ ] No

## VIII. RELATED CASE(S) IF ANY *(See instructions):*
JUDGE _____  DOCKET NUMBER _____

DATE: 4/21/2020

SIGNATURE OF ATTORNEY OF RECORD

**FOR OFFICE USE ONLY**

RECEIPT #   AMOUNT   APPLYING IFP   JUDGE   MAG. JUDGE

[Print]   [Save As...]   [Reset]